IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY E. PEEL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 12-CV-275-WDS |
| ) | No. 06-CR-30049-WDS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

### ORDER

**STIEHL, District Judge:**

Petitioner Gary E. Peel moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 12), and now before the Court is his motion for leave to pursue discovery and appoint counsel (Doc. 16). The Government has responded (Doc. 17), and petitioner has replied (Doc. 24). Petitioner then filed two additional motions advising the Court that he believes there "is no further justification for any delay" in ruling on his original motion for discovery (Docs. 27, 28).

#### BACKGROUND

The Seventh Circuit Court of Appeals related the facts of petitioner's criminal case as follows:

> The events giving rise to this case go back a long way. In 1967 the defendant married. Seven years later he began an affair with his wife's [Deborah J. Peel's] 16-year-old sister [D.R.]. In the course of the affair, which lasted several months, he took nude photographs of her … . In response to her later request for the pictures, he gave her some of them … and, without telling her, retained others in a file in his office.

> In June 2003 the Peels divorced, and agreed to a marital settlement. The following year [the defendant] filed suit in an Illinois state court to vacate the settlement. The year after that he filed for bankruptcy and asked the bankruptcy court to discharge the financial obligations to his ex-wife that the settlement agreement had imposed. She opposed the discharge and filed a claim for the money that he owed her under the settlement. … [H]is debt to her under the settlement probably was not dischargeable in bankruptcy under the Bankruptcy Code as it then read. (Under the current Code, it almost certainly would not be dischargeable.) So he had to persuade her to drop the claim.
>
> Negotiations looking to compromise it were predictably acrimonious and in the course of them the defendant told her about the nude photographs of her sister and said that 'these would be … an item that would likely get out into the public if we didn't stop this escalating battle of putting things in the newspaper.' He backed up his threat by placing photocopies of the photographs in her mailbox. She complained to the police and later to federal authorities, and at their direction made recorded phone calls to the defendant. The conversations confirmed that he was blackmailing her with the photographs. He faxed her a draft of a settlement agreement that she had previously rejected, adding a provision requiring him to return certain unidentified photographs to her. They met and he showed her the originals. The meeting was recorded, and included an exchange in which she said: "So you resort to blackmailing me?" He replied: "There's nothing left. I'm down to: no kids; no grand-kids; no money." "And, so," she responded, "blackmailing me with photographs . . . . Okay, but as long as I go ahead and sign these settlement agreements." He replied: "Right then you have . . . ." And she: ". . . you'll give me the photographs . . . ." And he: "On the spot."

*United States v. Peel*, 595 F.3d 763, 765–66 (7th Cir. 2010) (internal citations omitted).

A jury convicted him of bankruptcy fraud, obstruction of justice, and possession of child pornography (Doc. 183, Case No. 06-CR-30049-WDS). On appeal, the Seventh Circuit reversed in part and remanded for resentencing. *See United States v. Peel*, 595 F.3d 763 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 994 (2011). On remand, this Court dismissed the obstruction-of-justice conviction, recalculated the intended loss, redetermined the

2

guidelines sentencing range, and resentenced petitioner under 18 U.S.C. § 3553(a) to 144 months in prison (consecutive sentences of 24 months for bankruptcy fraud and 120 months for possession of child pornography). The Seventh Circuit affirmed. *See United States v. Peel*, 668 F.3d 506 (7th Cir. 2012). Petitioner now brings 16 grounds for relief in his amended § 2255 motion, all based on ineffective assistance of counsel.

## DISCUSSION

A petitioner seeking relief under § 2255 is not permitted discovery as a matter of course as in ordinary civil litigation. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).[1] According to Rule 6(a) of the *Rules Governing Section 2255 Proceedings for the United States District Courts*:

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

The moving party "must provide reasons for the request" and "must specify any requested documents." Rule 6(b). Before addressing whether a petitioner is entitled to discovery, the court must identify the essential elements of his claim. *Bracy*, 520 U.S. at 904 (quotation omitted). At that point, good cause may be shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief … .'" *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *Brown–Bey v. United States*, 720 F.2d 467, 471 (7th Cir. 1983). The Seventh Circuit has explained that to satisfy the requirements of Rule 6, the petitioner must (1) make a colorable claim

---

[1] Although the Supreme Court was addressing Rule 6 of the *Rules Governing Section 2254 Cases in the United States District Courts*, not Rule 6 of the *Rules Governing 2255 Cases*, the rules are nearly identical and use the same good-cause standard. *See, e.g.*, *Jones v. United States*, 231 Fed. App'x 485, 488 (7th Cir. 2007) (citing *Bracy*, 520 U.S. at 908–09)).

3

showing the underlying facts, if proven, constitute a constitutional violation; and (2) show "good cause" for the discovery. *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004); *Henderson v. Walls*, 296 F.3d 541, 553 (7th Cir. 2002), *vacated on other grounds*, 537 U.S. 1230 (2003). Good cause cannot exist where the facts alleged do not provide a basis for relief. *Hubanks*, 392 F.3d at 933 (citing *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990)).

## ANALYSIS

Petitioner believes many documents and facts he needs to prove his claims of ineffective assistance of counsel will not be included in the transcripts and records of prior proceedings, such as:

> (a) Documents from the bankruptcy-court proceedings, *In re Gary E. Peel*, BK 05-33238 (Bankr. S.D. Ill.). Petitioner seeks documents showing that his ex-wife, Deborah Peel, submitted false claims of over $3,234,000 to the bankruptcy court; that the bankruptcy trustee initiated an adversary claim against her; that the true value of her claim was only about $158,500; that she refused to sign a confidentiality agreement before deposing petitioner's second wife, Deborah Pontious-Peel; and that she withdrew her opposition to the dischargeability of the marital settlement agreement before petitioner's criminal offenses (January 20, 2006).
>
> (b) St. Clair County family-court documents, Case No. 03-D-320. Petitioner seeks to counter the Government's arguments that he was losing in the family and bankruptcy courts. These documents would allegedly show that he was "extremely liberal" in the marital settlement agreement with Deborah Peel, compelled the sale of commercial property over her objections, and preserved a claim to proceeds from the sale of their home.
>
> (c) A letter from Steve Stanton. Petitioner seeks to contradict the allegation in the indictment that he wanted to force Deborah Peel to stop trying to depose Pontious-Peel. The letter purportedly shows that petitioner twice offered Pontious-Peel for deposition.

>(d) The Fairview Heights Police Department's internal investigation file on Officer Jeff Peel's background check on Pontious-Peel. The file will show that neither petitioner nor Pontious-Peel tried to have Jeff Peel fired as he testified, but rather that they insisted he not lose his job.
>
>(e) Transcripts of bankruptcy-court hearings. Petitioner again wants to show that Deborah Peel had withdrawn her opposition in the bankruptcy proceedings before petitioner's attempted blackmail. He also believes the transcripts will show that the bankruptcy court directed her to execute a confidentiality agreement before deposing Pontious-Peel.

Petitioner moves for an attorney to assist with discovery because he is not able to conduct discovery himself while in prison. Petitioner also submits a proposed request to admit, which contains a list of questions for the Government that he believes will economize on judicial time and resources (Doc. 16, Ex. A).

The Court must first identify the essential elements of petitioner's claims. His claims are all premised on ineffective assistance of counsel, so he ultimately must establish both that his counsels' representation fell below an objective standard of reasonableness and that he was prejudiced as a result. *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *accord Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006). Prejudice means that, but for counsel's deficiency, there is a reasonable probability the outcome would have been different. *Strickland*, 466 U.S. at 690. Accordingly, on this motion for leave to pursue discovery, petitioner must make specific allegations that show reason to believe that he may, if the facts are fully developed, be able to demonstrate that his counsels' representation fell below an objective standard of reasonableness *and* that he was prejudiced as a result. Petitioner does not meet that standard.

First, a number of the documents he seeks consist of evidence that was introduced by testimony at trial. Deborah Peel testified on cross-examination that she had refused to sign a confidentiality agreement before deposing Pontious-Peel (Tr. Vol. IV, 13:16–15:4), so bankruptcy documents would not add anything. Stanton also testified that he and petitioner were "ready to go" with the deposition but were waiting on Deborah Peel to sign the confidentiality agreement (a protective order) (Tr. Vol. IV, 24:2–9). Stanton's letter would be redundant.

Next, petitioner seeks bankruptcy- and family-court documents to undermine the Government's argument that he was losing those cases, which motivated his blackmail attempt. The documents would also purportedly show that Deborah Peel's bankruptcy claims were inflated, worth only $158,000 instead of over $3,000,000. Petitioner wants documents from the St. Clair County family court to show that he was "extremely liberal" in the settlement agreement with Deborah Peel, that he sold commercial property over her objection, and that he preserved a claim to the proceeds from the sale of their home.

The Government correctly points out, however, that the Court did not permit certain evidence from the bankruptcy and family courts. Petitioner was not allowed to impeach Deborah Peel with evidence about the sale of their home and commercial property because "[t]he reasons for the defendant's filing of bankruptcy are of little relevance to the bankruptcy related charges in this case" (Doc. 113, p. 2, No. 06-CR-30049). So petitioner's attorneys cannot be blamed for not having sought to introduce similar evidence.

More importantly, petitioner's arguments ignore that he initiated the bankruptcy proceeding himself and tried to have the marital settlement agreement discharged. The exact amount of Deborah Peel's claims is of little relevance. Moreover, in the phone conversation recounted above, petitioner told Deborah Peel he was blackmailing her in part because he had "no money." It is unlikely that the proposed documents could have lessened the force of petitioner's own statements. Thus his attorneys' representation was reasonable

6

in not seeking to admit the documents.

Regarding petitioner's allegation that Deborah Peel withdrew her opposition to discharge before petitioner's criminal offenses (January 20, 2006), petitioner claims in his § 2255 motion that he had compelled her to withdraw her opposition or face Rule 11 sanctions. Of course, such a fact, if it were true, was within petitioner's knowledge and he could have testified to it at trial. But the records show that Deborah Peel did not withdraw. For example, after January 20, 2006, she filed a motion to continue because she needed additional time to prepare for trial. *See Peel v. Peel*, Doc. 31, BK 05-3226 (Bankr. S.D. Ill. Jan. 23, 2006). And petitioner's complaint to have the marital settlement agreement discharged was not declared moot until April 14, 2008, *see id.*, Doc. 58, so she did not withdraw her opposition.

Petitioner seeks an entire internal investigation file from the Fairview Heights Police Department. His son, Jeff Peel, was a police officer in the department and had conducted a background check on petitioner's new wife, Pontious-Peel, using the department's data system. At petitioner or Pontious-Peel's instance, the department investigated the incident and issued Jeff Peel a letter of reprimand. And so, at petitioner's trial, Jeff Peel testified that he had had an amiable relationship with petitioner up to the time of petitioner's criminal offenses in 2006, until petitioner tried to have him (Jeff Peel) fired. Now petitioner wants the investigation file to show he did not want Jeff Peel to be fired. But petitioner did not relate that evidence to his attorneys. In fact, after Jeff Peel's testimony about having had a relationship with petitioner until petitioner tried to have him fired, petitioner's attorneys questioned Jeff Peel immediately about the background check and re-established that he had done it years before 2006, which made him appear to have harbored a bias against petitioner for some time (Tr. IV, 14:1–18:1). In any event, Jeff Peel could hold the opinion that petitioner tried to have him fired whatever petitioner actually said to the police department. The fact that petitioner may have urged the department not to fire Jeff Peel is

7

of little consequence.

In summary, the discovery petitioner seeks consists of information that was introduced at trial, would have been excluded by the Court, or is of only slight relevance. Thus he has not made any specific allegations that would give the Court reason to believe he may, if the facts are fully developed, be able to demonstrate that his attorneys' representation fell below an objective standard of reasonableness, and that he was prejudiced as a result. As to petitioner's request to admit, the proposed questions do not appear helpful. They either seek to establish facts that are in the record or raise legal issues that the Court will resolve. Petitioner's motion for leave to pursue discovery and appoint counsel is therefore **DENIED** (Doc. 16). Petitioner's two additional motions for leave to pursue discovery are also **DENIED** (Docs. 27, 28). The Court has not yet determined whether an evidentiary hearing is needed for petitioner's § 2255 motion. If it is, the Court will appoint counsel pursuant to Rule 8(c) of the *Rules Governing Section 2255 Proceedings*.

**IT IS SO ORDERED.**

**DATED: January 9, 2013**

/s/ **WILLIAM D. STIEHL**
**DISTRICT JUDGE**