IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GARY E. PEEL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 12-CV-275-WDS** |
| | ) | **No. 06-CR-30049-WDS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER

**STIEHL, District Judge:**

Petitioner Gary E. Peel is serving a 12-year sentence for bankruptcy fraud and possession of child pornography. He now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 12). The Government has responded (Doc. 22), and petitioner has replied (Doc. 25). Petitioner also moves for summary judgment on his claims (Doc. 30), and the Government has responded (Doc. 31) and he has replied (Doc. 34). In addition, petitioner moves to expedite the entry of orders (Doc. 35).

### BACKGROUND

The Seventh Circuit Court of Appeals related the facts of petitioner's criminal case as follows:

> The events giving rise to this case go back a long way. In 1967 the defendant married. Seven years later he began an affair with his wife's [Deborah J. Peel's] 16-year-old sister [Donna Rodgers]. In the course of the affair, which lasted several months, he took nude photographs of her … . In response to her later request for the pictures, he gave her some of them … and, without telling her, retained others in a file in his office.
>
> In June 2003 the Peels divorced, and agreed to a marital set-

1

tlement. The following year [the defendant] filed suit in an Illinois state court to vacate the settlement. The year after that he filed for bankruptcy and asked the bankruptcy court to discharge the financial obligations to his ex-wife that the settlement agreement had imposed. She opposed the discharge and filed a claim for the money that he owed her under the settlement. … [H]is debt to her under the settlement probably was not dischargeable in bankruptcy under the Bankruptcy Code as it then read. (Under the current Code, it almost certainly would not be dischargeable.) So he had to persuade her to drop the claim.

Negotiations looking to compromise it were predictably acrimonious and in the course of them the defendant told her about the nude photographs of her sister and said that "these would be … an item that would likely get out into the public if we didn't stop this escalating battle of putting things in the newspaper." He backed up his threat by placing photocopies of the photographs in her mailbox. She complained to the police and later to federal authorities, and at their direction made recorded phone calls to the defendant. The conversations confirmed that he was blackmailing her with the photographs. He faxed her a draft of a settlement agreement that she had previously rejected, adding a provision requiring him to return certain unidentified photographs to her. They met and he showed her the originals. The meeting was recorded, and included an exchange in which she said: "So you resort to blackmailing me?" He replied: "There's nothing left. I'm down to: no kids; no grand-kids; no money." "And, so," she responded, "blackmailing me with photographs … . Okay, but as long as I go ahead and sign these settlement agreements." He replied: "Right then you have … ." And she: "… you'll give me the photographs … ." And he: "On the spot."

*United States v. Peel*, 595 F.3d 763, 765–66 (7th Cir. 2010) (internal citations omitted).

A jury convicted petitioner for bankruptcy fraud, 18 U.S.C. § 152(6), obstruction of justice, 18 U.S.C. § 1512(c)(2), and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (Doc. 183, No. 06-CR-30049-WDS). On appeal, the Seventh Circuit reversed in part and remanded for resentencing. *See United States v. Peel*, 595 F.3d 763 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 994 (2011). On remand, this Court dismissed the obstruction-of-justice conviction, recalculated the intended loss, redetermined the guidelines

sentencing range, and resentenced petitioner to 144 months in prison (consecutive sentences of 24 months for bankruptcy fraud and 120 months for possession of child pornography). The Seventh Circuit affirmed. *See United States v. Peel*, 668 F.3d 506 (7th Cir. 2012). Petitioner now brings 16 grounds for relief in his amended § 2255 motion, all based on ineffective assistance of counsel.

**DISCUSSION**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." § 2255(b).

Under the Sixth Amendment, a criminal defendant is guaranteed the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). He is not entitled to "the best available counsel or the most prudent strategies." *Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997). The right to effective assistance of counsel is satisfied if counsel "chooses a professionally competent strategy that secures for the accused the benefit of an adversarial trial." *Id.* To establish ineffective assistance of counsel, the defendant must show both that his counsel's performance was deficient and that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012).

The proper standard of counsel's performance is that of "reasonably effective assistance," which means the defendant, to prevail, must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Moreover, counsel's performance must be evaluated considering all the circumstances, "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 688, 690. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The reasonableness standard is not meant "to second-guess counsel's strategic decisions." *Recendiz*, 557 F.3d at 531; *accord United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir. 1994) ("This court will not second-guess trial tactics that are rationally-based.").

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In making this determination, the court must consider "the totality of the evidence before the judge or jury." *Id.* at 695.

It is "a heavy burden" to prove ineffective assistance of counsel. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006); *accord United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (To prove both deficient performance and prejudice "is not easy, because courts must presume that counsel is effective."). The defendant "has an obligation to show us why his counsel was ineffective. … Speculation based on hindsight is insufficient to make this showing." *George v. Smith*, 586 F.3d 479, 486 (7th Cir. 2009).

## ANALYSIS

Upon review of petitioner's motion and the files and records of the case, the Court

4

finds that they conclusively show that petitioner is entitled to no relief. An evidentiary hearing is unnecessary. *See* § 2255(b); *Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000).

*Constitutional Claims*

Petitioner makes three related arguments that his attorneys' failure to raise certain constitutional arguments on his behalf constituted ineffective assistance of counsel. He first argues that his prosecution for child pornography under 18 U.S.C. § 2252A(5)(B) violated the Due Process Clause of the Fifth Amendment because he did not have fair notice that his actions were criminal. He says the Government cannot hold him criminally responsible for conduct that he could not reasonably have understood to be illegal. For him, numerous factors suggested the "legitimacy and noncriminal nature" of his possession of the nude photographs of Donna Rodgers. For instance, he says when he took the pictures in 1974, his sexual activity with Rodgers was legal because it was consensual and the age of consent in Illinois was 16; there was no Illinois law establishing an age other than 16 to consent to being photographed nude; and there was no child-pornography statute.

Petitioner makes a second due-process argument that depends entirely on his assertion that his sexual activity with Rodgers was legal. He says they were both adults in 1974, old enough to engage in sexual activity, and could "consent to memorializing said conduct through photography." Therefore, he says, applying the child-pornography statute to him did not accomplish its legislative purpose of protecting children from sexual exploitation and abuse.

Petitioner's third due-process argument is that he and Rodgers were consenting adults, the photographs were not an integral part of conduct in violation of a valid criminal statute, and so it violated due process to deprive him of his First Amendment rights.

Except for the third argument, petitioner does not cite any law supporting his due-

process claims. At most, he cites cases elsewhere in his brief in which courts found attorneys ineffective for failing to raise constitutional issues in general. Those cases do not apply here.[1] Pro se parties are generally afforded leeway in their pleadings, but they still need to support their arguments. And, in this instance, petitioner was an attorney. Accordingly, he waives his first two due-process claims by failing to support them. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008); *Kramer v. Banc of Am. Secs., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *United States v. Jones*, 224 F.3d 621, 626 (7th Cir. 2000); *see also* SDIL-LR 7.1(d) ("All briefs shall contain a short, concise statement of the party's position, together with citations to relevant legal authority and to the record.").

Nonetheless, the Court finds that petitioner's attorneys performed reasonably. His due-process arguments amount to the claim that ignorance of the law is a defense to criminal prosecution, which is not true, except in limited situations that do not apply here. *See, e.g.*, *Bryan v. United States*, 524 U.S. 184, 193 (1998) ("[T]he background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence to prove that 'an evil-meaning mind' directed the 'evil-doing hand.'"); *Cheek v. United States*, 498 U.S. 192, 199–200 (1991) (exception for certain federal criminal tax statutes); *Lambert v. People of the State of Cal.*, 355 U.S. 225, 228 (1957) (exception for city's registration requirement). His attorneys were therefore wise not to make the due-process arguments, if they considered them. But most likely they did not consider them because petitioner testified, and part of his defense was, that he did not know how old Rodgers was. He claimed he thought she was over 18 (Testimony of Gary Peel, Tr. Vol. VI, 6:4–12); *see also Peel*, 595 F.3d at 771. Having argued he thought Rodgers was over 18, petitioner cannot now claim that he was relying on factors such as the age of consent in Illinois, much less blame

---

[1] For instance, in *Kimmelman v. Morrison*, the defendant's trial attorney had chosen not to conduct *any* pretrial discovery, which led to his failure to bring a Fourth Amendment challenge to a search. The Supreme Court found the attorney's representation was unreasonable. 477 U.S. 365, 385–87 (1986).

his attorneys for not arguing that. *See Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011); *Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based … on informed strategic choices made by the defendant and on information supplied by the defendant.").

Petitioner references Illinois law throughout his § 2255 motion. Yet he was convicted under federal law in effect in 2006 when he possessed the nude photographs. That law defines a "minor" as anyone under 18. *See* 18 U.S.C. § 2256(1). What petitioner did in 1974, and the state of the law in Illinois then, is not relevant. *See Peel*, 595 F.3d at 769 ("The defendant was charged with possession of child pornography in 2005 and 2006, long after the statute had been amended to raise the age of majority."). As to petitioner's repeated assertions that his sexual relationship with Rodgers was legal, it was not. The court of appeals has explained that he was "guilty of contributing to the sexual delinquency of a minor … a misdemeanor form of statutory rape." *Peel*, 668 F.3d at 510.[2]

Related to that, petitioner believes his appellate counsel should have presented the "rule of lenity," which provides that "when there are two equally plausible interpretations of a criminal statute, the defendant is entitled to the benefit of the more lenient one," *United States v. Taylor*, 640 F.3d 255, 259–60 (7th Cir. 2011). He says Rodgers's status as an adult was controlled by Illinois law in 1974. One statute prohibited sexual activity with anyone under 16, *see* Ill. Rev. Stat. ch. 38, ¶ 11-4 (1967), while another prohibited sexual activity with anyone under 18, *see* Ill. Rev. Stat. ch. 38, ¶ 11-5 (1967). He claims the statutes produce an irreconcilable ambiguity. It is not necessary to parse them, though, since petitioner was not convicted under either. As the Court discussed above, the only relevant law is the federal statute, 18 U.S.C. § 2252A. There is no merit to this claim, and petitioner's appellate counsel were reasonable in not raising it.

Regarding petitioner's third due-process claim, which actually asserts a violation of his First Amendment rights, the court of appeals has already held that his First Amendment

---

[2] This Court had mistakenly taken judicial notice that the age of consent for sexual activity in 1973 and 1974 was 16 (Jury Charge, Tr. Vol. VII, 57:14–16).

argument is frivolous (in addition to being forfeited). *See Peel*, 668 F.3d at 510. The only difference now is that petitioner invokes due process and ineffective assistance of counsel. Since the underlying argument is frivolous, petitioner's new claim in no way calls into question his attorneys' performance.

He adds separately that his appellate attorneys were ineffective for not raising his constitutional claims, or for doing so too late, in his petition for rehearing *en banc*, which was denied.[3] He suggests his constitutional claims were denied only because he forfeited them. That is not accurate, though. As just mentioned, the court of appeals did consider and reject them. *See id.* His appellate attorneys were not ineffective.

Petitioner's next claim is loosely based on equal protection, although it also derives from his unique understanding of the First Amendment. He contends that Rodgers had reached the age of 16 and was exercising her First Amendment rights of free speech and free expression by posing nude, that petitioner was exercising his First Amendment right to possess nude photographs of 16-year-olds, and that these were fundamental rights. Section 2252A, he says, "targeted" two groups: the group of 16- and 17-year-olds in Illinois who had achieved adult status and the right to pose nude, and the group of individuals who took possession of non-obscene nude photographs of 16- and 17-year-olds. He argues that fundamental rights cannot be denied to particular groups. In a related vein, petitioner distinguishes laws regulating the possession of alcohol, stolen property, and narcotics from laws regulating the possession of items protected by the Constitution, such as offensive books, pornography, and religious accoutrements.

The Court finds no basis for petitioner's claim of ineffective assistance of counsel. If a law neither burdens a fundamental right nor targets a suspect class, then a classification is permissible "so long as it bears a rational relation to some legitimate end." *Romer v. Ev-*

---

[3] He raises the same argument as a separate "ground" in his memorandum, "The Failure of Appellate Counsel to Raise, for Plain Error Appellate Review, the Indictment's Failure under Counts 3 and 4 to Allege Criminal Offenses" (Doc. 12, Ex. 1, p. 47). These are the same arguments he makes throughout his memorandum.

*ans*, 517 U.S. 629, 631 (1996). No fundamental right was burdened here. The court of appeals scotched the First Amendment claim. There is no right to possess (or pose for) child pornography. *See, e.g.*, *United States v. Alvarez*, --- U.S. ----, 132 S.Ct. 2537, 2544 (2012) (citing *New York v. Ferber*, 458 U.S. 747 (1982)). No suspect class was targeted either because there is no such thing as a class of individuals unfairly denied access to child pornography.

While discussing equal protection, petitioner suggests the child-pornography statute was applied retroactively to him in violation of the *Ex Post Facto* Clause of the Constitution. Petitioner has already argued this on appeal, and the Seventh Circuit found it to be frivolous (in addition to being forfeited). *See Peel*, 668 F.3d at 510; *see also United States v. Porter*, 709 F.Supp. 770 (E.D. Mich. 1989), *aff'd*, 895 F.2d 1415 (6th Cir. 1990) ("The production date of the photographs is wholly immaterial to the offense"). His attorneys were not ineffective for not raising a frivolous claim.

*Affirmative Defense*

Petitioner argues that his attorneys failed to raise the affirmative defense provided in 18 U.S.C. § 2252A(c).[4] He claims his attorneys should have argued that Rodgers "was an adult at the time" the photographs were produced. But this is another argument that has been rejected on appeal. *See Peel*, 595 F.3d at 769–71. Consequently, petitioner's defense could not have been prejudiced.

---

[4] That section states:
It shall be an affirmative defense to a charge of violating paragraph (1), (2), (3)(A), (4), or (5) of subsection (a) that—
(1)(A) the alleged child pornography was produced using an actual person or persons engaging in sexually explicit conduct; and
  (B) each such person was an adult at the time the material was produced; or
(2) the alleged child pornography was not produced using any actual minor or minors.

*Jury Instruction*

At trial, the Government offered, and the Court accepted, a jury instruction that de-fined the term "lascivious" using the factors outlined in *United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986). [5] Plaintiff contends that the *Dost* factors apply only to visual depic-tions of a minor, while Rodgers was an adult. He argues that his attorneys should have used the contemporary-community-standards test from *Miller v. California*, 413 U.S. 15 (1973).

Since Rodgers was not an adult, this claim is frivolous. And, although this circuit has not expressly endorsed the *Dost* factors, it is not plain error to use them. *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011); *United States v. Schuster*, 706 F.3d 800, 807 (7th Cir. 2013).

Moreover, petitioner again neglects to discuss his attorneys' conduct, which the Court must evaluate "as a whole." *Knox v. United States*, 400 F.3d 519, 521 (7th Cir. 2005) (citing *Strickland*, 466 U.S. at 690). They offered their own definition of lascivious: "that which tends to arouse sexual desires" (Doc. 131, p. 34), and then contrasted the im-ages in a Victoria's Secret catalog with a photograph of Rodgers:

> I want to show you something. This is my daughter's Victo-ria['s] Secret catalog. This is lascivious. The looks, the pos-es, the postures of these young women, 18, 19, 20 years old. This stuff is lascivious. That photograph [of Rodgers] is in bad taste, and it's uncomfortable, but it is not lascivious. It is not a crime. Because you can look in the photo, you can look in magazines, you can find poses, you can find models who are posed in far more suggestive ways, far more sexual ways than what you see in this photograph.

(Closing Argument by Mr. Kavanaugh, Tr. Vol. VII, 96:17–25). Referring to Rodgers's photograph, petitioner's attorney asked the jury, "Do photographs like this, do they arouse sexual desire? Take a look at it. It's in bad taste. It's embarrassing." (*id.*, 96:6–8).

---

[5] Child pornography is a depiction of a minor engaging in "sexually explicit conduct," 18 U.S.C. § 2256(8)(A), which includes the actual or simulated "*lascivious* exhibition of the genitals or pubic area," § 2256(2)(A)(v) (emphasis added).

So petitioner also objects to the use of the Victoria's Secret catalog. He says his attorney "effectively confessed that the nude photos of [Rodgers] were sufficient to meet the jury instruction's 'lasciviousness' test." He quotes only a portion of the comments above and distorts the meaning.[6] His attorneys incorporated their jury instruction's meaning of lascivious and effectively characterized the photograph of Rodgers as embarrassing and uncomfortable. And, it must be said, they had a difficult case to make. The Government's arguments on the lasciviousness of the photograph were devastating—that Rodgers was wearing "nothing but her braces"; that the focal point was her vagina (which petitioner admitted to the jury); and that she and petitioner had sex the same day the photograph was taken (Closing Argument by Ms. Hudson, Tr. Vol. VII, 79:17–25, 80:1–10). Petitioner's attorneys used a reasonable trial strategy, and the Court may not second-guess it. *See, e.g.*, *Zarnes*, 33 F.3d at 1473 ("This court will not second-guess trial tactics that are rationally-based."); *United States v. Booker*, 981 F.2d 289, 295 (7th Cir. 1992).

Petitioner next suggests that one of his attorneys breached his duty of loyalty to petitioner. In his closing argument, the attorney began by saying:

> Members of the jury. I'd be the first one to say that I don't think I'd like to have Gary Peel marry my daughter. But I'll also say this on his behalf, I'm proud to be his lawyer, and I'm proud to defend him in this case. Because this  is a case of overzealous, over-reaching prosecution. This is a case where the Government created a crime that otherwise did not exist.

(Closing Argument by Mr. Kavanaugh, Tr. Vol. VII, 81:20–82:1). Petitioner plucks out only the second sentence above and says it "reflects a certain disbelief, dislike, hostility, or animus by counsel towards his own client—thereby breaching counsel's duty of loyalty." Petitioner's reading is not plausible. His attorney focused the jury on the Government's actions. He also tried to gain credibility by distancing himself from certain of petitioner's

---

[6] Petitioner quotes the comments as follows: "'I want to show you something. This is my daughter's Victoria's Secret catalogue. This is lascivious. The looks, the poses, the postures of these young woman [sic], 18, 19, 20 years old. This stuff is lascivious.'" (Doc. 12, Ex. 1, p. 30).

actions, a legitimate tactic. *Cf. Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (noting it may be a sound tactic to acknowledge guilt on a lesser count when the evidence is overwhelming). Had he *only* said he was proud to be petitioner's lawyer and proud to defend him, the jury would have been confused, if not shocked, "[w]hen one considers the ugliness of [petitioner's] criminal affair with his 16-year-old sister-in-law" and "the gross impropriety of his making and retaining (for decades) nude photographs of her." *Peel*, 668 F.3d at 510. The Court finds no basis for this claim. Petitioner's attorney acted reasonably in the circumstances of this case.

*Failure to Impeach Government Witness*

Petitioner believes his son Jeff Peel's testimony was particularly damaging to his credibility. Jeff was a police officer for the Fairview Heights Police Department. When he heard that his father was having an affair with a woman (Deborah Pontious-Peel) who was significantly younger than his mother (Deborah Peel), he ran a background check on Pontious-Peel using the police department's data system (Testimony of Jeff Peel, Tr. Vol. IV, 4:7–18). Pontious-Peel found out and notified the police department, who investigated and issued Jeff a letter of reprimand. At the end of direct examination, the Government asked Jeff whether he had any hope of keeping his relationship with his father, petitioner, alive. Jeff responded, "Honestly, when he tried to have me fired, I pretty much said I don't need anything to do with him anymore" (*id.*, 14:1–6).

Petitioner now claims he and Pontious-Peel did not want Jeff fired and believes his attorneys were deficient for not refuting Jeff's testimony. The Government responds that petitioner's attorneys immediately questioned Jeff about the police department's investigation of him, focusing on Jeff's own misconduct. The word "misconduct" was used numerous times (*id.*, 14–17).

The Court finds that this one statement could hardly have prejudiced petitioner's

case. Jeff in fact made a number of damaging statements.[7] Petitioner is unable to show that, but for his attorneys' errors, there is a reasonable probability that the result of his trial would have been different. Otherwise, petitioner's attorneys used a reasonable strategy in focusing on Jeff's misconduct. They also re-established that Jeff had conducted the background check on Pontious-Peel years before petitioner's criminal conduct, which made it appear that Jeff had harbored a bias against petitioner for a long time (*id.*, 14:1–18:1). And even if petitioner and Pontious-Peel did not want Jeff fired, Jeff may have *believed* they did. It was his opinion. This Court may not second-guess counsels' strategic decisions. *See, e.g.*, *Zarnes*, 33 F.3d at 1473.

*Failure to Contradict the Government's Blackmail Theory*

The Government's blackmail theory was that petitioner was motivated by his financial situation. The indictment charged that he threatened his ex-wife, Deborah Peel, that she needed to abandon her opposition to his bankruptcy proceedings, stop trying to depose his new wife, and agree to a new financial settlement or he would mail nude photographs of Rodgers to her parents. In cooperation with federal authorities, Deborah Peel recorded a conversation between herself and petitioner in which he admitted to blackmailing her, in part because he had no money: Deborah Peel, "So you resort to blackmailing me?" Petitioner, "There's nothing left. I'm down to: no kids; no grand-kids; no money." In this motion, petitioner argues that his attorneys were ineffective for not addressing the Government's theory of his motive. He wanted them to argue that his actions were in response to his family's release of confidential information to a local newspaper, that he wanted to maintain confidentiality.[8] "One thing in particular" was that he had given an 800-pound

---

[7] Petitioner once told Jeff at lunch, "[Y]our brother hates me, your sister doesn't want anything to do with me, it's just easier to group you guys all together. I don't want to see you anymore." (Testimony of Jeff Peel, Tr. Vol. IV, 10:6–10).)

[8] In petitioner's first appeal, he argued that his object "was to get [Deborah Peel] to drop her opposition to his state-court suit to dissolve the marital agreement." *Peel*, 595 F.3d at 768.

mermaid statue to his new wife, Pontious-Peel (Testimony of Gary Peel, Tr. Vol. VI, 18:6–15).

Petitioner lists the evidence he believes his attorneys should have introduced to sway the jury; e.g., they should have introduced his marital settlement agreement with Deborah Peel because it would show he had been "extraordinarily generous" to her.[9] He also faults them for not countering the Government's claim that he was losing in the bankruptcy and family courts; he believes they should have introduced evidence that he had successfully sold commercial property and claimed proceeds from the sale of their marital home. Yet the Court ruled that such evidence was to be excluded because it was not relevant to the charges in the indictment (Doc. 113, p. 2, No. 06-CR-30049). Petitioner's attorneys cannot be blamed for following the Court's order. Petitioner second-guesses their strategy now, in hindsight, saying they should have offered the evidence to refute the Government's blackmail theory instead of to attack Deborah Peel's credibility. That was a strategic decision, however, which is not grounds for a Sixth Amendment claim. *See, e.g.*, *Zarnes*, 33 F.3d at 1473. Moreover, the jury heard petitioner tell Deborah Peel he was blackmailing her because he had *no money*. Further, he had declared bankruptcy and was trying to have the settlement agreement discharged. So his financial condition was apparent, and his attorneys were reasonable in not trying to make it seem marginally better than it was.

Petitioner argues his attorneys were deficient for not introducing evidence that Deborah Peel withdrew her opposition to the bankruptcy proceedings,[10] that her $2,800,000 claim in the bankruptcy proceeding was fraudulent (worth only $158,455.63), that the bankruptcy trustee initiated an adversary proceeding against her, that the settlement agreement was dischargeable in bankruptcy, and that the parties stipulated there was

---

[9] The more generous he was, though, the greater the financial burden on him; that supports the Government's theory.

[10] Petitioner asserts that he had compelled her to withdraw it or face sanctions.

no fraud relating to his declaration of bankruptcy.

The Court has reviewed the records, including those from the bankruptcy proceeding, and finds that petitioner's assertions are groundless. Deborah Peel did not withdraw her opposition to the bankruptcy proceedings.[11] The specific amount of her claim in bankruptcy is not relevant; whatever the amount, petitioner sought to have the settlement agreement discharged.[12] An adversary proceeding against Deborah Peel is also not relevant to petitioner's criminal trial.[13] Whether petitioner's obligation to Deborah Peel could be discharged was a question for the bankruptcy court, not this one.[14] Finally, regarding a stipulation, the Government responds that it could not find such a document. Even if there were one, though, it would not have been relevant.[15]

Regarding Deborah Peel's attempts to depose petitioner's new wife, Deborah Pontious-Peel, petitioner contends that his attorneys should have introduced evidence that he offered her dates for the deposition and that Deborah Peel violated the bankruptcy judge's order by scheduling the deposition without first signing a confidentiality agreement.[16] Yet petitioner makes no reference to his attorneys' conduct, which the Court must evaluate for its reasonableness considering all the circumstances. They did ask Deborah Peel about deposing Pontious-Peel, and she admitted she had refused to sign a confidentiality agreement (Testimony of Deborah J. Peel, Tr. Vol. IV, 13:16–15:4). Petitioner's attorney in the bankruptcy proceeding, Steven Stanton, also testified that petitioner was "ready to go" with the

---

[11] For example, after January 20, 2006, she filed a motion to continue because she needed additional time to prepare for trial. *See Peel v. Peel*, Doc. 31, BK 05-3226 (Bankr. S.D. Ill. Jan. 23, 2006).

[12] Petitioner testified that he could not satisfy his obligations under the settlement agreement. Question: "And that occasioned your filing for bankruptcy; is that correct?" Petitioner: "It is." (Testimony of Gary Peel, Tr. Vol. VI, 21:18–24).

[13] The adversary proceeding (objection) was not filed until about four months after petitioner's criminal trial. *See In re Peel*, Doc. 126, BK 05-33238 (Bankr. S.D. Ill. July 20, 2007).

[14] Deborah Peel's complaint to determine dischargeability was declared moot over a year after petitioner's trial ended. *Peel v. Peel*, Doc. 31, BK 05-3326 (Bankr. S.D. Ill. April 14, 2008).

[15] Petitioner's attorneys did ask his bankruptcy attorney, Steven Stanton, about the bankruptcy. He testified it was legitimate and in good faith (Steven T. Stanton, Tr. Vol. VI, 14:8–15).

[16] Petitioner says he "successfully obtained an order … from the Bankruptcy Judge—over Deborah J. Peel's objection—that compelled her … to execute a Confidentiality Order … before [his] second wife could be deposed" (Doc. 12, Ex. 1, p. 39).

deposition and was only waiting on Deborah Peel to sign the confidentiality agreement (or protective order) (Testimony of Steven T. Stanton , Tr. Vol. VI, 24:2–9). Consequently, petitioner's attorneys did introduce evidence that petitioner was willing to proceed with the deposition. There was no deficient performance on his attorneys' part.

Petitioner faults his attorneys for not objecting to use of the term "blackmail" by the Government and its witnesses during trial. He says he was not charged with the statutory offense of blackmail, *see* 18 U.S.C. § 873, so the repeated use of the term was prejudicial. But "repeated use" is an exaggeration. The Government did not use the term in its opening argument, and used it only once in the closing (in rebuttal, in fact) (Rebuttal Closing Argument by Mr. Burke, Tr. Vol. VII, 104:3). Deborah Peel used it in the recorded conversation with petitioner ("So you resort to blackmailing me?"). That use was accurate in the common meaning of the word, to extort money from someone by threatening to reveal a damaging or incriminating secret.[17] Petitioner had threatened to mail photographs of a nude 16-year-old girl to her elderly parents. The Court does not see how the association of the term blackmail with the statutory offense would have *prejudiced* him. Regarding Deborah Peel's use in recorded conversation, petitioner's attorneys did object to the Government's jury instruction on silence in the face of an accusation (Doc. 120, p. 2, Case No. 06-CR-30049). As a result, the Court substituted "blackmail" for "crime" in the instruction.[18] Petitioner's attorneys later argued for a new trial based on the jury instruction as it was given (Doc. 152, pp. 10–11, *id.*).

Therefore, given the meaning of blackmail, what petitioner had threatened to do, and his attorneys' objections, the Court finds that his allegation of prejudice does not rebut the strong presumption that his attorneys' conduct fell within the wide range of reasonable

---

[17] *blackmail, v.*, OED ONLINE, http://www.oed.com/view/Entry/19744 (last visited April 29, 2013).

[18] The modified instruction read: "You have heard evidence that Deborah J. Peel accused defendant of 'blackmail,' and that the defendant did not deny or object to the accusation. If you find that the defendant was present and heard and understood the accusation, and that it was made under such circumstances that the defendant would deny it if it were not true, then you may consider whether the defendant's silence was an admission of the truth of the accusation" (Doc. 131, Ex. 1, p. 9, Case No. 09-CR-30049).

professional assistance.

And, in general, as to petitioner's allegations regarding the Government's black-mail theory, the Court does not find that the cited deficiencies above rise nearly to the level of a Sixth Amendment violation. Petitioner's attorneys argued that he did not intend to deceive anyone and that he was responding to his family's attempts to humiliate him in public (Closing Argument by Mr. Kavanaugh, Tr. Vol. VII, 82–85). But the Government presented the recorded conversation in which petitioner offered a settlement agreement in exchange for the photographs; it was obvious he was not merely trying to keep information out of the newspaper. *See Peel*, 595 F.3d at 768 (explaining that petitioner wanted Deborah Peel to drop her opposition to his state-court lawsuit, "but he also wanted her claim in the bankruptcy proceeding dismissed"). His attorneys' performance was more than just reasonable considering all the circumstances. And they were entitled to defend him using their professional judgment whether petitioner agreed or not. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

*Failure to Object to Hearsay*

Marianne Dilman was a process engineer at Polaroid Corporation in charge of manufacturing its film. She had worked there for over 19 years. The Government introduced her as a fact witness to establish that the photographs petitioner took of Rodgers were produced using Polaroid film that had been mailed, shipped, or transported in interstate commerce. Dilman testified that Polaroid had only four manufacturing facilities, and that it had never had one in Illinois. She was not yet employed at Polaroid in 1974, when the film at issue in this case was likely produced, so she relied on her own historical knowledge of the company, including unspecified records and conversations with employ-

ees.[19]

Petitioner's attorneys objected that Dilman's testimony crossed the line into that of an expert witness (*id.*, 6:12–9:15). Their objection was overruled because, the Court found, Dilman was testifying as anyone would who works in a plant and is familiar with its records and operations. The attorneys raised the issue again in their motion for a new trial (Doc. 152, p. 20–22, Case No. 06-CR-30049). The Court denied the motion, again finding that Dilman was testifying about Polaroid's business practices, and that the records she relied on were admissible under the business-records exception to hearsay, Federal Rule of Evidence 803(6).

Petitioner contends that his attorneys should have objected to Court's use of Rule 803(6). He says it applies only to documents, not testimony. Had Dilman's testimony been excluded, petitioner believes the Government would not have been able to establish an interstate nexus for his child-pornography conviction in count 4.

The Court finds no basis for this claim.[20] Petitioner's attorneys objected at least twice to Dilman's testimony. And they provided some basis for reasonable doubt by pointing out that Dilman was not working for Polaroid in 1974. Petitioner has not uncovered, and no evidence was presented, that Polaroid did have a facility in Illinois. Thus the Court finds that petitioner's attorneys secured for him the benefit of an adversarial trial. Their conduct was well within the wide range of reasonable professional assistance. Petitioner's case was not prejudiced, moreover, since a witness's personal knowledge may include knowledge gleaned from business records and conversations in general, *see Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997); *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989) ("Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is the repe-

---

[19] She said "from reading information and talking with operators that might have been there" (Testimony of Marianne Dilman, Tr. Vol. III, 12:22–13:1).
[20] The court of appeals did not address this argument. *See generally United States v. Peel*, 595 F.3d. 763 (7th Cir. 2010).

tition of a statement made by someone else"). Dilman was a 19-year employee of Polaroid in charge of film manufacturing. Her testimony was properly admitted based on her personal knowledge of Polaroid's operations.

*Failure to Negotiate Transactional Immunity*

Before his indictment, petitioner met with members of the United States Attorney's Office on January 31, 2006, and entered into a proffer agreement (Doc. 28, Ex. 1, Case No. 06-CR-30049). The agreement stated that the Government would not use any statements or information provided by petitioner in its case in chief in any criminal case against him, but it was permitted to make derivative use of the information (*id.*). During the proffer, petitioner revealed the location and other details about the photocopier[21] he used to copy the photographs of Rodgers. He now asserts that the Government used that information to obtain a search warrant, seize the photocopier, and later establish that it had traveled in interstate or foreign commerce, a necessary element of petitioner's conviction on count 3. He argues that the Government would not have been able to establish the interstate-commerce element if his attorney had negotiated transactional immunity or advised him not to participate in the proffer. He is also feels aggrieved that the Government had the discretion to judge his truthfulness for purposes of a breach in the proffer agreement.

The Court finds this claim to be frivolous for several reasons. First, the Government did not obtain a search warrant and seize the photocopier; petitioner produced it voluntarily (Defendant's Motion *in Limine*, Doc. 28, p. 2, Case No. 06-CR-30049).[22] Second, it was not unreasonable to have engaged in the proffer; it might have resulted in a sentence reduction, had petitioner cooperated. *See United States v. Lewis*, 117 F.3d 980, 984 (7th Cir. 1997). However, and third, petitioner breached the agreement by lying to the Govern-

---

[21] The photocopier was referred to at trial in various ways, e.g., as an "all-in-one printer." The Court uses "photocopier" for simplicity.
[22] He asserted in a motion *in limine* (really a motion to suppress) that he was truthful and cooperated, so the Government should not be allowed to introduce any of the evidence he provided.

ment's agents (Doc. 50, Case No. 06-CR-30049). So his own actions, not his attorney's, undermined his case. *See United States v. Parker*, 609 F.3d 891, 895–96 (7th Cir. 2010) (finding the defendant's counsel could not have caused him prejudice when the defendant himself made certain admissions under oath). Consequently, given petitioner's breach, the Government was not bound to the agreement, and transactional immunity would have been meaningless. Lastly, transactional immunity is "full immunity from prosecution for the offense to which the compelled testimony relates." *Kastigar v. United States*, 406 U.S. 441, 452 (1972). To suggest that the Government might have agreed to give petitioner full immunity from prosecution, when he had already handed over the nude photographs of Rodgers and been recorded making threats to Deborah Peel, is inane.

Petitioner does not meet his burden of showing either that his proffer attorney's representation fell below an objective standard of reasonableness, or that petitioner was in any way prejudiced.

*Failure to Raise Sentencing Issues*

To determine petitioner's guidelines sentencing range, the Court calculated the intended loss for petitioner's convictions for bankruptcy fraud and obstruction of justice. *See* U.S.S.G. § 2B1.1. At the first sentencing, the court incorrectly estimated it was over $1 million. On remand, the Court recalculated and came to a new estimate of over $400,000. The new guidelines range was 51–63 months, with a statutory maximum of 60 months. The Court sentenced petitioner below the guidelines range, to 24 months. *See Peel*, 668 F.3d at 508. Petitioner now claims that the Court invaded the province of the jury and enhanced his sentence beyond the maximum authorized for the crime, such that his attorneys should have objected based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). [23]

---

[23] In his reply brief, petitioner appears to add a challenge to his sentence for possession of child pornography

*Apprendi* and *Blakely* are only relevant, however, when a sentence exceeds the statutory maximum. *Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at 303–04; *United States v. Waltower*, 643 F.3d 572, 575–78 (7th Cir. 2011) ("[S]o long as a sentence does not exceed the statutory maximum, there is no Sixth Amendment concern with the advisory guidelines scheme."); *United States v. Krieger*, 628 F.3d 857, 863 (7th Cir. 2010). As just indicated, petitioner was sentenced below the 60-month maximum, to 24 months. Further, *Apprendi* and *Blakely* are not relevant because the federal sentencing guidelines are advisory, not mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005); *Waltower*, 643 F.3d at 576. A reasonably effective attorney would not have considered this objection.

*Cumulative and Spillover Effects*

Finally, petitioner contends that the Court should not ignore the cumulative and spillover effects of his attorneys' deficiencies. Rather than evaluate each individual error separately, a court must consider a pattern of errors in its totality. *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006). Similarly, the Second Circuit has held that when some convictions are overturned, a court must consider any spillover effects on the remaining convictions. *Lindstadt v. Keane*, 239 F.3d 191, 205 (2d Cir. 2001). Yet the Court does not find any instances of constitutionally deficient performance here, so there is no pattern that must be considered in its totality. The Court is also not overturning any convictions, so there are no spillover effects.

*Certificate of Appealability*

Should petitioner wish to appeal, he must secure a certificate of appealability either from this Court or the Seventh Circuit. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c) (1). A certificate of appealability may issue only if the petitioner has made a "substantial

---

and to the Court's imposition of consecutive sentences on remand. These claims are waived for being made first in his reply brief. They have also been addressed on appeal. *See Peel*, 668 F.3d at 508.

showing of the denial of a constitutional right," § 2253(c)(2), which means that when the district court has denied the constitutional claims on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner need not show that his appeal will succeed, *Miller–El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part, *id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

Here, petitioner's underlying constitutional claims, e.g., due process, are without merit. They either depend on Illinois law, which is not relevant to his federal convictions, or have already been addressed by the court of appeals. His other allegations of attorney error are either frivolous or serve only to illustrate how well his attorneys did represent him. Accordingly, the Court does not find that reasonable jurists would find its assessment of the constitutional claims debatable or wrong. A certificate of appealability will not be issued. If petitioner wishes to appeal, he may request that a circuit judge issue the certificate. *See* Fed. R. App. P. 22(b)(1).

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 12) is **DENIED**. Petitioner's motions for summary judgment (Doc. 30) and to expedite the entry of orders (Doc. 35) are **DENIED** as moot. The Court declines to issue a certificate of appealability. This case is **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: <u>April 29, 2013</u>**

<u>/s/ **WILLIAM D. STIEHL**</u>
**DISTRICT JUDGE**

22